**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| iROBOT CORPORATION, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19-cv-12125 |
| | ) | |
| SHARKNINJA OPERATING LLC, | ) | **JURY TRIAL DEMANDED** |
| SHARKNINJA MANAGEMENT LLC, AND | ) | |
| SHARKNINJA SALES COMPANY, | ) | |
| | | |
| Defendants. | | |

## FIRST AMENDED COMPLAINT
## FOR PATENT INFRINGEMENT AND FALSE ADVERTISING

Plaintiff iRobot Corporation ("iRobot" or "Plaintiff"), by and through its attorneys, for its Complaint against Defendants SharkNinja Operating LLC, SharkNinja Management Company, and SharkNinja Sales Company (collectively, "Shark" or "Defendants"), hereby alleges as follows.

## NATURE OF THE ACTION

1.      This is an action arising under the patent laws of the United States, 35 U.S.C. § 271, *et seq.*, and under the Lanham Act, 15 U.S.C. § 1125 *et seq*.

2.      Under the Patent Act, iRobot seeks to enjoin infringement and obtain damages resulting from Defendants' unauthorized manufacture, use, sale, and/or offer to sell within the United States and/or importation into the United States of products that infringe one or more claims of United States Patent Nos. 9,921,586 ("the '586 patent"), 9,550,294 ("the '294 patent"), 9,492,048 ("the '048 patent"), 8,950,038 ("the '038 patent"), 8,418,303 ("the '303 patent"), and 10,045,676 ("the '676 patent") (collectively, "the patents-in-suit").  iRobot seeks preliminary and permanent injunctive relief to prevent Defendants from continuing to infringe the patents-in-suit.

In addition, iRobot seeks monetary damages, including treble damages, resulting from Defendants' direct, indirect, and willful infringement of the patents-in-suit.

3.      Defendants manufacture, use, sell, and/or offer to sell within the United States and/or import into the United States infringing robotic cleaners, including Defendant's Shark IQ Robot product line.  The infringing Shark IQ Robot products include at least two versions, one with a standard base station and one with a self-empty base station, and include the RV1000 Series, the RV1000AE Series, model R101, and model R101AE.  The identification of these infringing products reflects publicly available information and iRobot's investigations to-date, but additional products and models that perform substantially the same features described herein also infringe for the same reasons.

4.      Defendants also have made and are making false and misleading advertising claims in connection with the Shark IQ Robot, including claims about its features and comparisons to iRobot's competing robotic vacuums, in violation of the Lanham Act.  iRobot seeks to enjoin Defendants' false and misleading advertising claims, and to obtain damages resulting from Defendants' deceptive marketing and promotion of its Shark IQ robot vacuum.

## PARTIES

5.      Plaintiff iRobot Corporation is a corporation organized under the laws of the State of Delaware and has its principal place of business at 8 Crosby Drive, Bedford, MA 01730.

6.      On information and belief, Defendant SharkNinja Operating LLC is a limited liability company organized and existing under the laws of the State of Delaware and has its principal place of business at 89 A Street, Suite 100, Needham, MA 02494.

7.      On information and belief, Defendant SharkNinja Management Company is a company duly organized and existing under the laws of the State of Delaware and has its principal place of business at 89 A Street, Suite 100, Needham MA 02494.

8.     On information and belief, Defendant SharkNinja Sales Company is a company duly organized and existing under the laws of the State of Delaware and has its principal place of business at 89 A Street, Suite 100, Needham MA 02494.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a), 1338(a), 1338(b).

10.     Defendants are subject to personal jurisdiction in this district because Defendants have their principal place of business in this district.  Further, Defendants regularly transact business in this district by, among other things, making, using, selling, or offering to sell products to customers located in this district.

11.     Defendants have committed acts of infringement of one or more claims of each of the patents-in-suit in this district.  Defendants have also developed and issued false and misleading advertisements with respect to the Shark IQ Robot from and in this district.

12.     Venue in this district is proper under 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because, Defendants have committed acts of infringement and false advertising and have a regular and established place of business in this district.

## FACTUAL BACKGROUND

13.     iRobot is a leader in consumer robotics, and *the* leader in robotic vacuum cleaners. In 1990, three engineers from the Massachusetts Institute of Technology's Artificial Intelligence Lab founded iRobot.  In its early years, iRobot focused on research and development of robot technology for security, exploration, the U.S. military, and environmental disaster applications. For instance, iRobot designed the PackBot for the United States military, and it was so versatile and successful it's also excelled at numerous civilian applications.  As a testament to iRobot's

renown, its very first product (a six-legged robot designed for space exploration) now resides at the Smithsonian Air & Space Museum in Washington, D.C.

14.     In the early 2000s, iRobot recognized that its technology could also revolutionize consumer products, and it did just that with the launch of the Roomba®, bringing robotics into the home to tackle the (otherwise) tedious task of vacuuming.  The first Roomba® models established iRobot as the pioneer in home robotics.  iRobot's steadfast commitment to R&D and its continual striving to introduce innovative new product features solidified its reputation with consumers and competitors.

15.     Most recently, in 2018 and 2019, iRobot introduced the Roomba® "i" and "s" Series products.  iRobot had spent significant resources developing innovative technologies that allowed these products to be the most autonomous robot vacuums on the market.  For instance, available features now include: the robot can create a map of a user's home so the user can schedule when and what rooms the robot cleans; the robot can return to its base to recharge if it runs low on battery power while cleaning, and then can resume where it left off once it is recharged; and the robot can autonomously empty its dust bin into the base station, which can store over 30 dust-bins-worth of debris.  Whereas previous products (from iRobot and every other competitor) required manual intervention much more frequently, the features available in the newest Roomba® products are capable of vacuuming your floors for a month without any user input, maintenance, or thought.

16.     Not surprisingly, consumers have immediately recognized the benefits and value of these features.  In fact, the i7+ was recognized as one of Time Magazine's Inventions of the Year in 2018.  Now, over a year after the launch of the i7+ in the United States, iRobot's major

competitor in robotic vacuums, Shark, also appears to have recognized the benefits and value of these iRobot features.

17.     Despite knowing that iRobot's innovative features are protected by iRobot's patents, over a year after the launch of the i7+ Shark chose to make a knockoff product incorporating these features without iRobot's permission—the Shark IQ Robot.  Shark is not even shy about being a copycat—claiming that the Shark IQ Robot offers the same iRobot technology at "half the price of iRobot i7+".  https://direct.sharkclean.com/16/products/shark-iq-robot-self-empty-vacuum-rv1001ae/18/microsite/ogv/ (last accessed October 14, 2019).  Shark is now misappropriating iRobot's innovative and patented technology to compete against iRobot.  iRobot brings this suit to stop this unlawful and unfair conduct.

18.     Defendants provide the following materials, including demonstrations, training, guides, videos, websites, and/or manuals, regarding the Shark IQ Robot:

Video found at https://direct.sharkclean.com/16/products/shark-iq-robot-self-empty-vacuum-rv1001ae/18/microsite/ogv/?opt=2 (Ex. M);[1]

Video found at https://www.amazon.com/Shark-Self-Empty-Connected-RV1001AE-Capacity/dp/B07S864GPW/ref=sr_1_3?crid=1AK8NC92M32EZ&keywords=shark+iq+robot&qid=1570812255&sprefix=shark+iq%2Caps%2C149&sr=8-3 (Ex. N);

Video found at https://www.youtube.com/playlist?list=PLO-s5C_my0mWw-xmUD_cMfIzTGLXjv23v (Ex. O);

Webpage found at https://www.sharkclean.com/vacuums/robot-vacuums/ (Ex. P);

Webpage found at https://direct.sharkclean.com/16/products/shark-iq-robot-self-empty-vacuum-rv1001ae/18/microsite/ogv/?opt=2 (Ex. Q);

Webpage found at https://www.sharkclean.com/support/product-series/1222/shark-iq-robot-vacuum-r101ae-with-self-empty-base-wi-fi-and-home-mapping/faqs/#faq-3206 (Ex. R);

---

[1]  Exhibits M, N, and O to this First Amended Complaint were previously filed via CD with iRobot's original Complaint in this case.  *See* Dkts. 1-13, 1-14, 1-15 (Oct. 15, 2019).

Instruction manual found in the Shark Clean Application (Ex. S);

Instruction manual found at https://www.sharkclean.com/include/pdf/qsg-rv1001ae.pdf (Ex. T);

Instruction manual found at https://www.sharkclean.com/include/pdf/manual-rv1001ae.pdf (Ex. U);

Instruction manual found in Shark IQ product packaging (Ex. V);

Instruction manual found in Shark IQ product packaging (Ex. W).

## SHARK'S FALSE AND MISLEADING ADVERTISING FOR ITS IQ ROBOT VACUUM

19.     In addition to copying iRobot's patented features, Shark has also unfairly competed with iRobot by making false and misleading advertising claims about its Shark IQ robot vacuum. Shark has largely built its business on making "me too" advertising claims, purporting to offer competitive products with the same features and advantages as its technologically-more-advanced competitors at a lower price.  But because its products are, in reality, lesser engineered and cheaper, Shark relies on misleading advertising, rigged infomercial demonstrations, and outright false claims to try to persuade consumers to buy its products.  Not surprisingly, numerous district courts nationwide, juries, and the National Advertising Division of the Council of Better Business Bureaus' National Programs[2] have all found Shark's advertising claims to be false and misleading. Just last year, a jury found that Shark not only misled consumers about its vacuums, but did so knowingly and intentionally, and rendered a verdict against Shark disgorging it of over $16 million in ill-gotten profits.

20.     Instead of learning a lesson from the repeated rulings against it, Shark yet again has launched a false and misleading advertising campaign in connection with its new Shark IQ robot vacuum.  Disseminated nationwide across the Internet, in infomercials, and on packaging, Shark's

---

[2] The "NAD" is the advertising industry's self-regulatory body.

false campaign for the Shark IQ directly targets iRobot's Roomba® vacuums, including its top-of-the-line i-series and s-series robot vacuums.  Shark expressly and falsely claims that the Shark IQ offers the same technological advancements as iRobot, but at less than half the price.

21.     Shark's false advertising campaign harms both iRobot and consumers.  Shark's false claims regarding the nature of its own robot vacuums and false comparisons to iRobot's robot vacuums threaten iRobot with lost sales; price erosion; reputational harm; and loss of market share, customers, technological lead-time, and goodwill, as well as other forms of irreparable harm.  At the same time, Shark's false statements about its—and iRobot's—vacuums deceive consumers about the performance and capabilities of these products.  The holiday shopping season is fast approaching, and the deception and timing of Shark's new false advertising campaign is intentional.

22.     Shark's advertising for its Shark IQ robot vacuum includes several false and misleading claims regarding the technology allegedly offered by that Shark vacuum.  Shark presents these claims in an extended infomercial for the Shark IQ, on the product's packaging, and on the Internet, including Shark's www.sharkclean.com website.

23.     For example, recognizing the importance and value of iRobot's patented "Recharge and Resume" feature, Shark has sought to convince consumers that it too offers this same benefit.  In fact, in its marketing campaign for the Shark IQ, Shark repeatedly and pervasively tells consumers that the Shark IQ offers the same "recharge and resume" feature that consumers get with the i series and s series Roomba® robot vacuums.

24.     Specifically, in promoting the Shark IQ on its website, www.sharkclean.com, Shark boasted that its new robot vacuum is designed to return to its base "***when battery power is low***" in order to "recharge, then resumes right where it left off":



25.     Shark has made other claims about the Shark IQ using similar language, such as "***when it's time to recharge,*** it returns to its base to empty and recharge, then resumes right where it left off.":



26.     Similarly, on its packaging and webpage, Shark promotes to consumers that the Shark IQ "Recharges when needed and picks up where it left off," again necessarily implying that "when needed" is when the IQ detects the battery is low.



27.     Moreover, in an infomercial that it regularly runs on television, Shark tells consumers that "*standard robots can run out of power in the middle of cleaning. Not the Shark IQ robot. It automatically returns to its base, recharges, and resumes cleaning where it left off.*" Again, Shark necessarily implies to consumers that the Shark IQ, instead of running out of power, monitors its battery level and returns to its base when the battery is low, recharges, then resumes cleaning where it left off.  Shark makes similar statements throughout this lengthy advertisement.

28.     In fact, later in the infomercial, Shark's CEO Mark Rosenzweig reinforces the message that the Shark IQ detects when the battery is low and returns to the base to recharge, then resumes cleaning.  The spokesmodel notes that "a lot of people have questions about robot vacuums" and specifically asks "how long does the battery last before you have to recharge it?" Mr. Rosenzweig expressly tells consumers that "the Shark IQ Robot was designed to clean for up to 90 minutes at a time, ***when it's time to recharge, it automatically goes back to the base, recharges and resumes its cleaning mission right where it left off.***"

29.     In other words, throughout its advertising, Shark tells consumers that its Shark IQ offers the same benefit as iRobot's patented technology—the advantage of detecting a need to recharge, and then returning to the base to recharge and resume cleaning where it left off.

30.     In representations to this Court, however, Shark claims that its Shark IQ robot vacuum does nothing of the sort.  Just last week, Shark represented to this Court that:

- The Shark IQ's "recharge and resume feature is never triggered by detecting a need to recharge,"

- When the Shark IQ "decides to recharge and resume, it often has over half of its battery life remaining," and

- "if the robot determines that the battery is low, the robot returns to the dock to recharge, but does *not resume to continue cleaning*." (emphasis in original)

31.     Shark has advertised to virtually every customer of the Shark IQ that its robot vacuum returns to the base and recharges "when battery power is low," "when it's time to recharge," or "when needed."  Shark's advertising statements are directly contrary to its statements to the Court, and both cannot be true.

32.     In another example, Shark also tries to convince consumers that it offers the same benefit as iRobot's patented technology that allows consumers to select and schedule what rooms to clean and when to do so.  Demonstrating the importance of that iRobot feature to consumers, Shark's marketing campaign has repeatedly and pervasively claimed that the Shark IQ offers consumers the benefit of a choosing which rooms to clean and when to clean them.

33.     Specifically, Shark's advertisements state that the Shark IQ "lets you select which rooms to clean—or when to clean them—through the app," literally and necessarily implying to consumers that the Shark IQ offers the advantage of being able to select certain rooms to clean, and being able to decide when those selected rooms will be cleaned:



Knows where to go

Home mapping lets you select
which rooms to clean—or when to
clean them—through the app.

34.     Shark reinforces this same false message—that the consumer can select specific rooms and schedule a time to clean them—in promoting its App and Voice Activation features, explaining to consumers that the select and schedule features work in conjunction with each other: "Tell your robot where to clean and when, with the app or with voice control via Amazon Alexa or Google Assistant."  In fact, Shark's advertisement literally tells consumers that they can select where to clean (*i.e.*¸ "Alexa, have Shark clean my living room") *and* schedule when to clean:



App and voice control

"Alexa, have Shark clean my living room."

Tell your robot where to clean and when, with the app or with voice control via Amazon Alexa or Google Assistant.

35.     In representations to this Court, however, Shark claims that its Shark IQ does nothing of the sort.  Just last week, Shark represented to this Court:

- a "user" of the "Shark IQ Robot … cannot select which rooms to clean and when to clean them," and

- "there is no ability to select a schedule for the selected rooms."

36.     Shark has advertised to virtually every customer of the Shark IQ that they will be able to direct their robot vacuum "where to clean and when."  Shark's advertising statements are directly contrary to its statements to the Court, and both cannot be true.

37.     Shark's false and misleading advertising claims, including the regarding recharge-and-resume and selected-cleaning features, are material to consumers because they are likely to influence consumers' purchasing decisions.  Indeed, Shark's false claims relate to key features that offer automation, convenience and efficiency to consumers—inherent characteristics of robot vacuums (*i.e.*, to take the work out of vacuuming).

38.     Shark itself recognizes the materiality of these claims, as evidenced by its prominent use of the claims in its website and infomercial.  Notably, Shark's claims around these features mimic iRobot's claims regarding the performance and technological advancement of its own Roomba® robot vacuums:

| Feature | iRobot's Marketing Claims | Shark's Similar Marketing Claims |
|---|---|---|
| Selected Cleaning | Choose which rooms are cleaned and when in the iRobot HOME App. | Home mapping lets you select which rooms to clean—or when to clean them—through the app. |
| | Imprint™ Smart Mapping allows you to control which rooms are cleaned and when. | Total home mapping with room select maps your home and lets you choose which rooms to clean or avoid |
| Recharge / Resume | Automatically recharges, as needed, and then continues cleaning - until the job is done | Recharges when needed and picks up where it left off. |
| | Knows where it's been and what's left to clean. | Knows where it's been, where to go, and where to resume. |

39.     Upon information and belief, Shark's false and misleading advertising is willful and knowing.  Shark has told this Court that it never intended for the Shark IQ to recharge when the battery is low and then resume cleaning, nor to allow consumers to select rooms to clean and schedule when to clean them.  Shark claims that it made those decisions in late 2018 and early 2019.  Yet throughout Autumn 2019, Shark has knowingly promoted its Shark IQ robot vacuum with false claims about its recharge-and-resume and selected-cleaning features, designed to hide the shortcomings of Shark's lesser-capable IQ as compared to iRobot's technologically-advanced Roomba® vacuums.

40.     Shark's false and misleading claims are causing harm to iRobot in the marketplace, as they are likely to mislead consumers about the performance and technological advancements of the Shark IQ Robot when consumers make vacuum cleaner purchasing decisions.

41.     Shark compares its products directly to iRobot's robot vacuums, falsely telling consumers that the Shark IQ offers the same benefits as iRobot's products at "less than half the price."  Indeed, Shark expressly refers to iRobot's Roomba® vacuums by name throughout its advertisements and mimics the same language used by iRobot in describing the features of iRobot's Roomba® products.

42.     Shark's false statements that the Shark IQ Robot vacuums offer the same technological advancements as the Roomba® (and for a significantly lower price) diminish iRobot's goodwill among customers and tarnish the iRobot brand name to retailers and consumers.

43.     The harm to iRobot is exacerbated because Shark's false advertising will be disseminated during the most significant buying season, the holiday season.  Over 50% of iRobot's sales occur in the last quarter of the calendar year.

## U.S. PATENT NO. 9,921,586

44.     The U.S. Patent and Trademark Office issued the '586 patent, entitled "Celestial Navigation System for an Autonomous Vehicle," on March 20, 2018.  A true and correct copy of the '586 patent is attached as Exhibit A.

45.     iRobot has owned the '586 patent throughout the period of Defendants' infringing acts and still owns the '586 patent.

## U.S. PATENT NO. 9,550,294

46.     The U.S. Patent and Trademark Office issued the '294 patent, entitled "Autonomous Robot Auto-Docking and Energy Management Systems and Methods," on January 24, 2017.  A true and correct copy of the '294 patent is attached as Exhibit B.

47.     iRobot has owned the '294 patent throughout the period of Defendants' infringing acts and still owns the '294 patent.

## U.S. PATENT NO. 9,492,048

48.     The U.S. Patent and Trademark Office issued the '048 patent, entitled "Removing Debris from Cleaning Robots," on November 15, 2016.  A true and correct copy of the '048 patent is attached as Exhibit C.

49.     iRobot has owned the '048 patent throughout the period of Defendants' infringing acts and still owns the '048 patent.

## U.S. PATENT NO. 8,950,038

50.     The U.S. Patent and Trademark Office issued the '038 patent, entitled "Modular Robot," on February 10, 2015.  A true and correct copy of the '038 patent is attached as Exhibit D.

51.     iRobot has owned the '038 patent throughout the period of Defendants' infringing acts and still owns the '038 patent.

14

## U.S. PATENT NO. 8,418,303

52.     The U.S. Patent and Trademark Office issued the '303 patent, entitled "Cleaning Robot Roller Processing," on April 16, 2013.  A true and correct copy of the '303 patent is attached as Exhibit E.

53.     iRobot has owned the '303 patent throughout the period of Defendants' infringing acts and still owns the '303 patent.

## U.S. PATENT NO. 10,045,676

54.     The U.S. Patent and Trademark Office issued the '676 patent, entitled "Remote Control Scheduler and Method for Autonomous Robotic Device," on August 14, 2018.  A true and correct copy of the '676 patent is attached as Exhibit F.

55.     iRobot has owned the '676 patent throughout the period of Defendants' infringing acts and still owns the '676 patent.

## COUNT I -  INFRINGEMENT OF U.S. PATENT NO. 9,921,586

56.     iRobot incorporates the foregoing Paragraphs 1-45 by reference as though fully set forth herein.

57.     Defendants have been making, using, selling, or offering to sell within the United States and/or importing into the United States the Shark IQ Robot product family and are infringing, directly and/or indirectly, with willfulness or willful blindness, either literally and/or under the doctrine of equivalents at least claims 1, 4, 5, 7-11, 14, and 18 of the '586 patent under 35 U.S.C. § 271.  Defendants' infringing products include the Shark IQ Robot with or without the self-empty base (including the RV1000 Series, RV1000AE Series, R101 model and R101AE model).

58.     Exhibit G attached hereto compares Defendants' Shark IQ Robot model number R101AE to claim 1 of the '586 patent.  On information and belief, Defendants produce additional

robotic vacuum cleaners, including Shark IQ Robot model number R101, which are similar in all material respects, and therefore infringe for the same reasons set forth in Exhibit G.

59.     In addition to their direct infringement, Defendants have actively induced others to infringe claims of the '586 patent, including claim 1, in violation of 35 U.S.C. § 271(b) and Defendants continue to induce infringement even today.

60.     Defendants have had actual knowledge of the '586 patent and their infringement of the '586 patent at least as of October 8th, 2019, when iRobot notified Shark of their infringement, if not earlier.

61.     Upon information and belief, in developing their products, including at least Defendants' Shark IQ Robot family of products, Defendants emulated and copied features of iRobot's robotic vacuum products, including those features claimed by the '586 patent.

62.     Upon information and belief, Defendants knew that iRobot had patents covering its robotic vacuum product lines and either learned of the '586 patent or subjectively believed there was a high probability that iRobot had patents covering features of its robotic vacuum products but took deliberate actions to avoid learning of that fact and which features were patented.

63.     Despite knowing of the '586 patent or being willfully blind to the '586 patent, Defendants continued to make, use, sell, and offer to sell infringing products.  Defendants have been and are continuing to encourage other persons (*e.g.*, distributors, manufacturers, customers, and end users) to directly infringe the '586 patent with knowledge (or willful blindness) of that infringement, such as by making, advertising, selling, offering to sell, supporting, distributing, and using infringing features in Defendants' infringing products including the Shark IQ Robot with or without the self-empty base (including the RV1000 Series, RV1000AE Series, R101 model and R101AE model).  These other persons directly infringe the '586 patent.

16

64.     Defendants provide their customers and the public with materials, including demonstrations, training, guides, videos, websites, and/or manuals, that depict and describe the infringing features of the Shark IQ Robot (Exs. M-W).

65.     iRobot has suffered and will continue to suffer irreparable harm by Defendants' infringement of the '586 patent unless the court preliminarily and permanently enjoins Defendants from their activities.  iRobot is also entitled to recover damages from Defendants as a result of their infringement of the '586 patent.

66.     Due to Defendants' willful and deliberate infringement, the Court should award iRobot up to treble damages under 35 U.S.C. § 284 for infringement of the '586 patent.

## COUNT II - INFRINGEMENT OF U.S. PATENT NO. 9,550,294

67.     iRobot incorporates the foregoing Paragraphs 1-43 and 46-47 by reference as though fully set forth herein.

68.     Defendants have been making, using, selling, or offering to sell within the United States and/or importing into the United States its Shark IQ Robot product family and are infringing, directly and/or indirectly, with willfulness or willful blindness, either literally and/or under the doctrine of equivalents at least claims 1-5, 8, 9, 11, and 12 of the '294 patent under 35 U.S.C. § 271.  Defendants' infringing products include the Shark IQ Robot with or without the self-empty base (including the RV1000 Series, RV1000AE Series, R101 model and R101AE model).

69.     Exhibit H attached hereto compares Defendants' Shark IQ Robot model number R101AE to claim 1 of the '294 patent.  On information and belief, Defendants produce additional robotic vacuum cleaners, including Shark IQ Robot model number R101, which are similar in all material respects, and therefore infringe for the same reasons set forth in Exhibit H.

70.     In addition to their direct infringement, Defendants have actively induced others to infringe claims of the '294 patent, including claim 1, in violation of 35 U.S.C. § 271(b) and Defendants continue to infringe even today.

71.     Defendants have had actual knowledge of the '294 patent and their infringement of the '294 patent at least as of October 8th, 2019, when iRobot notified Shark of its infringement, if not earlier.

72.     Upon information and belief, in developing their products, including at least Defendants' Shark IQ Robot product family, Defendants emulated and copied features of iRobot's robotic vacuum products, including those features claimed by the '294 patent.

73.     Upon information and belief, Defendants knew that iRobot had patents covering its robotic vacuum product lines and either learned of the '294 patent or subjectively believed there was a high probability that iRobot had patents covering features of its robotic vacuum products but took deliberate actions to avoid learning of that fact and which features were patented.

74.     Despite knowing of the '294 patent or being willfully blind to the '294 patent, Defendants continued to make, use, sell, and offer to sell infringing products.

75.     Defendants have been and are continuing to encourage other persons (e.g., distributors, manufacturers, customers, and end users) to directly infringe the '294 patent with knowledge (or willful blindness) of that infringement, such as by making, advertising, selling, offering to sell, supporting, distributing, and using infringing features in Defendants' infringing products including the Shark IQ Robot with or without the self-empty base (including the RV1000 Series, RV1000AE Series, R101 model and R101AE model).  These other persons directly infringe the '294 patent.

76.     Defendants provide their customers and the public with materials, including demonstrations, training, guides, videos, websites, and/or manuals, that depict and describe the infringing features of the Shark IQ Robot (Exs. M-W).

77.     iRobot has suffered and will continue to suffer irreparable harm by Defendants' infringement of the '294 patent unless the court preliminarily and permanently enjoins Defendants from their activities.  iRobot is also entitled to recover damages from Defendants as a result of their infringement of the '294 patent.

78.     Due to Defendants' willful and deliberate infringement, the Court should award iRobot up to treble damages under 35 U.S.C. § 284 for infringement of the '294 patent.

## COUNT III - INFRINGEMENT OF U.S. PATENT NO. 9,492,048

79.     iRobot incorporates the foregoing Paragraphs 1-43 and 48-49 by reference as though fully set forth herein.

80.     Defendants have been making, using, selling, or offering to sell within the United States and/or importing into the United States their Shark IQ Robot product family and are infringing, directly and/or indirectly, with willfulness or willful blindness, either literally and/or under the doctrine of equivalents at least claims 12 and 18 of the '048 patent under 35 U.S.C. § 271. Defendants' infringing products include the Shark IQ Robot with the self-empty base (including the RV1000AE Series, and R101AE model).

81.      Exhibit I attached hereto compares Defendants' Shark IQ Robot model number R101AE to claim 12 of the '048 patent.

82.     In addition to their direct infringement, Defendants have actively induced others to infringe claims of the '048 patent, including claim 12, in violation of 35 U.S.C. § 271(b) and Defendants continue to induce infringement even today.

83.     Defendants have had actual knowledge of the '048 patent and their infringement of the '048 patent at least as of October 8th, 2019, when iRobot notified Shark of its infringement, if not earlier.

84.     Upon information and belief, in developing their products, including at least Defendants' Shark IQ Robot product family, Defendants emulated and copied features of iRobot's robotic vacuum products, including those features claimed by the '048 patent.

85.     Upon information and belief, Defendants knew that iRobot had patents covering its robotic vacuum product lines and either learned of the '048 patent or subjectively believed there was a high probability that iRobot had patents covering features of its robotic vacuum products but took deliberate actions to avoid learning of that fact and which features were patented.

86.     Despite knowing of the '048 patent or being willfully blind to the '048 patent, Defendants continued to make, use, sell, and offer to sell infringing products.

87.     Defendants have been and are continuing to encourage other persons (e.g., distributors, manufacturers, customers, and end users) to directly infringe the '048 patent with knowledge (or willful blindness) of that infringement, such as by making, advertising, selling, offering to sell, supporting, distributing, and using infringing features in Defendants' products including the Shark IQ Robot with the self-empty base (including the RV1000AE Series, and R101AE model).  These other persons directly infringe the '048 patent.

88.     Defendants provide their customers and the public with materials, including demonstrations, training, guides, videos, websites, and/or manuals, that depict and describe the infringing features of the Shark IQ Robot (Exs. M-W).

89.     iRobot has suffered and will continue to suffer irreparable harm by Defendants' infringement of the '048 patent unless the court preliminarily and permanently enjoins Defendants

from their activities.  iRobot is also entitled to recover damages from Defendants as a result of their infringement of the '048 patent.

90.     Due to Defendants' willful and deliberate infringement, the Court should award iRobot up to treble damages under 35 U.S.C. § 284 for infringement of the '048 patent.

## COUNT IV - INFRINGEMENT OF U.S. PATENT NO. 8,950,038

91.     iRobot incorporates the foregoing Paragraphs 1-43 and 50-51 by reference as though fully set forth herein.

92.     Defendants have been making, using, selling, or offering to sell within the United States and/or importing into the United States their Shark IQ Robot product family and are infringing, directly and/or indirectly, with willfulness or willful blindness, either literally and/or under the doctrine of equivalents at least claims 1, 5, 7, 9-12, and 14 of the '038 patent under 35 U.S.C. § 271. Defendants' infringing products include the Shark IQ Robot with or without the self-empty base (including the RV1000 Series, RV1000AE Series, R101 model and R101AE model).

93.     Exhibit J attached hereto compares Defendants' Shark IQ Robot model number R101AE to claim 1 of the '038 patent.  On information and belief, Defendants produce additional robotic vacuum cleaners, including Shark IQ Robot model number R101, which are similar in all material respects, and therefore infringe for the same reasons set forth in Exhibit J.

94.     In addition to theirs direct infringement, Defendants have actively induced others to infringe claims of the '038 patent, including claim 1, in violation of 35 U.S.C. § 271(b) and Defendants continue to induce infringement even today.

95.     Defendants have had actual knowledge of the '038 patent and their infringement of the '038 patent at least as of October 8th, 2019, when iRobot notified Shark of their infringement, if not earlier.

96.     Upon information and belief, in developing their products, including at least Defendants' Shark IQ Robot product family, Defendants emulated and copied features of iRobot's robotic vacuum products, including those features claimed by the '038 patent.

97.     Upon information and belief, Defendants knew that iRobot had patents covering its robotic vacuum product lines and either learned of the '038 patent or subjectively believed there was a high probability that iRobot had patents covering features of its robotic vacuum products but took deliberate actions to avoid learning of that fact and which features were patented.

98.     Despite knowing of the '038 patent or being willfully blind to the '038 patent, Defendants continued to make, use, sell, and offer to sell infringing products.

99.     Defendants have been and are continuing to encourage other persons (e.g., distributors, manufacturers, customers, and end users) to directly infringe the '038 patent with knowledge (or willful blindness) of that infringement, such as by making, advertising, selling, offering to sell, supporting, distributing, and using infringing features in Defendants' infringing products including the Shark IQ Robot with or without the self-empty base (including the RV1000 Series, RV1000AE Series, R101 model and R101AE model).  These other persons directly infringe the '038 patent.

100.    Defendants provide their customers and the public with materials, including demonstrations, training, guides, videos, websites, and/or manuals, that depict and describe the infringing features of the Shark IQ Robot (Exs. M-W).

101.    iRobot has suffered and will continue to suffer irreparable harm by Defendants' infringement of the '038 patent unless the court preliminarily and permanently enjoins Defendants from its activities.  iRobot is also entitled to recover damages from Defendants as a result of their infringement of the '038 patent.

102.     Due to Defendants' willful and deliberate infringement, the Court should award iRobot up to treble damages under 35 U.S.C. § 284 for infringement of the '038 patent.

**COUNT V - INFRINGEMENT OF U.S. PATENT NO. 8,418,303**

103.     iRobot incorporates the foregoing Paragraphs 1-43 and 52-53 by reference as though fully set forth herein.

104.     Defendants have been making, using, selling, or offering to sell within the United States and/or importing into the United States its Shark IQ Robot product family and are infringing, directly and/or indirectly, with willfulness or willful blindness, either literally and/or under the doctrine of equivalents at least claims 1, 6-11, 14, and 15 of the '303 patent under 35 U.S.C. § 271. Defendants' infringing products include the Shark IQ Robot with or without the self-empty base (including the RV1000 Series, RV1000AE Series, R101 model and R101AE model).

105.     Exhibit K attached hereto compares Defendants' Shark IQ Robot model number R101AE to claim 1 of the '303 patent.  On information and belief, Defendants produce additional robotic vacuum cleaners, including Shark IQ Robot model number R101, which are similar in all material respects, and therefore infringe for the same reasons set forth in Exhibit K.

106.     In addition to its direct infringement, Defendants have actively induced others to infringe claims of the '303 patent, including claim 1, in violation of 35 U.S.C. § 271(b) and Defendants continue to induce infringement even today.

107.     Defendants have had actual knowledge of the '303 patent and their infringement of the '303 patent at least as of October 8th, 2019, when iRobot notified Shark of its infringement, if not earlier.

108.     Upon information and belief, in developing their products, including at least Defendants' Shark IQ Robot product family, Defendants emulated and copied features of iRobot's robotic vacuum products, including those features claimed by the '303 patent.

109.   Upon information and belief, Defendants knew that iRobot had patents covering its robotic vacuum product lines and either learned of the '303 patent or subjectively believed there was a high probability that iRobot had patents covering features of its robotic vacuum products but took deliberate actions to avoid learning of that fact and which features were patented.

110.   Despite knowing of the '303 patent or being willfully blind to the '303 patent, Defendants continued to make, use, sell, and offer to sell infringing products.

111.   Defendants have been and are continuing to encourage other persons (e.g., distributors, manufacturers, customers, and end users) to directly infringe the '303 patent with knowledge (or willful blindness) of that infringement, such as by making, advertising, selling, offering to sell, supporting, distributing, and using infringing features in Defendants' infringing products including the Shark IQ Robot with or without the self-empty base (including the RV1000 Series, RV1000AE Series, R101 model and R101AE model).  These other persons directly infringe the '303 patent.

112.   Defendants provide their customers and the public with materials, including demonstrations, training, guides, videos, websites, and/or manuals, that depict and describe the infringing features of the Shark IQ Robot (Exs. M-W).

113.   iRobot has suffered and will continue to suffer irreparable harm by Defendants' infringement of the '303 patent unless the court preliminarily and permanently enjoins Defendants from its activities.  iRobot is also entitled to recover damages from Defendants as a result of its infringement of the '303 patent.

114.   Due to Defendants' willful and deliberate infringement, the Court should award iRobot up to treble damages under 35 U.S.C. § 284 for infringement of the '303 patent.

## COUNT VI -INFRINGEMENT OF U.S. PATENT NO. 10,045,676

115.    iRobot incorporates the foregoing Paragraphs 1-43 and 54-55 by reference as though fully set forth herein.

116.    On information and belief, Defendants have been using their robotic cleaners, including Shark IQ Robot model numbers R101 and R101AE, in tests and demonstrations in the United States, and are infringing, directly and/or indirectly, with willfulness or willful blindness, either literally and/or under the doctrine of equivalents at least claims 1, 2, 4-8, 10, and 14-18 of the '676 patent under 35 U.S.C. § 271.  Defendants' infringing products include the Shark IQ Robot with or without the self-empty base (including the RV1000 Series, RV1000AE Series, R101 model and R101AE model).

117.    Exhibit L attached hereto compares features available in Defendants' Shark IQ Robot model number R101AE to claim 1 of the '676 patent.  On information and belief, Defendants produce additional robotic vacuum cleaners, including Shark IQ Robot model number R101, which are similar in all material respects, and therefore infringe for the same reasons set forth in Exhibit L.

118.    In addition to its direct infringement, Defendants have actively induced others to infringe claims of the '676 patent, including claim 1, in violation of 35 U.S.C. § 271(b) and Defendants continue to induce infringement even today.

119.    Defendants have had actual knowledge of the '676 patent and their infringement of the '676 patent at least as of October 8th, 2019, when iRobot notified Shark of its infringement, if not earlier.

120.    Upon information and belief, in developing their products, including at least Defendants' Shark IQ Robot product family, Defendants emulated and copied features of iRobot's

robotic vacuum products. Use of such products along with Defendants' instructions, infringe the '676 patent.

121.    Upon information and belief, Defendants knew that iRobot had patents covering its robotic vacuum product lines and methods of use thereof, and either learned of the '676 patent or subjectively believed there was a high probability that iRobot had patents covering the method of use of its robotic vacuum products but took deliberate actions to avoid learning of that fact.

122.    Despite knowing of the '676 patent or being willfully blind to the '676 patent, Defendants continued to make, use, sell, and offer to sell products capable of infringing.

123.    Defendants have been and are continuing to encourage other persons (e.g., distributors, manufacturers, customers, and end users) to directly infringe the '676 patent with knowledge (or willful blindness) of that infringement, such as by making, advertising, selling, offering to sell, supporting, distributing, and using Defendants' products including the Shark IQ Robot with or without the self-empty base (including the RV1000 Series, RV1000AE Series, R101 model and R101AE model) in a way that infringes the '676 patent.

124.    Defendants provide their customers and the public with materials, including demonstrations, training, guides, videos, websites, and/or manuals, that depict and describe the infringing features of the Shark IQ Robot (Exs. M-W).

125.    Use of the Shark IQ Robot, in the manner depicted and described in the materials noted in the preceding paragraph infringes the '676 patent.

126.    iRobot has suffered and will continue to suffer irreparable harm by Defendants' infringement of the '676 patent unless the court preliminarily and permanently enjoins Defendants from its activities.  iRobot is also entitled to recover damages from Defendant as a result of its infringement of the '676 patent.

127.    Due to Defendants' willful and deliberate infringement, the Court should award iRobot up to treble damages under 35 U.S.C. § 284 for infringement of the '676 patent.

### COUNT VII-FEDERAL FALSE ADVERTISING

128.    iRobot hereby realleges and incorporates by reference paragraphs 1 through 43 of this Complaint as if set forth fully herein.

129.    Shark's commercial advertising claims described herein are false and misleading in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

130.    Shark has made material false and misleading statements in its commercial advertisements for its robotic vacuum cleaner products, and these statements regarding robotic vacuum cleaner performance have and are likely to continue to influence consumers' purchasing decisions.

131.    Shark's statements—including its various literally false claims—have the tendency to deceive a substantial segment of consumers, who have relied or likely will rely on Shark's false statements in making their robotic vacuum cleaner purchasing decisions.

132.    Shark has caused its false statements to enter interstate trade or commerce.

133.    As a direct and proximate result of Shark's false and deceptive campaign, iRobot is suffering immediate and continuing irreparable injury for which there is no adequate remedy at law.

134.    As a direct and proximate result of these actions, iRobot has suffered and will continue to suffer significant monetary damages and discernible competitive injury by the direct diversion of sales from iRobot to Shark and by a loss of goodwill associated with iRobot's vacuum cleaner products and brand.

(i)    Shark's false advertising is knowing and willful.  iRobot is entitled to injunctive relief and to the recovery of all available damages, attorneys' fees, costs, and Shark's profits.

27

135.    This is an exceptional case within the meaning of Section 35 of the Lanham Act, 15 U.S.C. § 1117.

## PRAYER FOR RELIEF

WHEREFORE, iRobot prays for relief and judgment against Defendants as follows:

A.  That Defendants have infringed one or more claims of the '586 patent, the '294 patent, the '048 patent, the '038 patent, the '303 patent, and the '676 patent under 35 U.S.C. § 271;

B.  A preliminary injunction against Defendants and their officers, directors, employees, agents, consultants, contractors, suppliers, distributors, all parent and subsidiary entities, all assignees and successors in interest, and all others acting in concert or privity with Defendants from further infringement of the '586 patent, the '294 patent, the '048 patent, the '038 patent, the '303 patent, and the '676 patent;

C.  A permanent injunction against Defendants and their officers, directors, employees, agents, consultants, contractors, suppliers, distributors, all parent and subsidiary entities, all assignees and successors in interest, and all others acting in concert or privity with Defendants from further infringement of the '586 patent, the '294 patent, the '048 patent, the '038 patent, the '303 patent, and the '676 patent;

D.  A finding that Shark has falsely advertised the features and technological advancements of its Shark IQ robot vacuum, and that Shark's false advertising was willful;

E.  A permanent injunction against Defendants and their officers, directors, employees, agents, consultants, contractors, suppliers, distributors, all parent and subsidiary entities, all assignees and successors in interest, and all others acting in concert or privity with Defendants from further disseminating false and misleading advertising statements regarding Shark's IQ robot vacuum;

28

F.  An award to iRobot of damages under 35 U.S.C. § 284 for the infringement of the '586

patent, the '294 patent, the '048 patent, the '038 patent, the '303 patent, and the '676

patent by Defendants, together with pre-judgment and post-judgment interest and costs;

G.  An award to iRobot of treble damages under 35 U.S.C. § 284 for the willful

infringement of the '586 patent, the '294 patent, the '048 patent, the '038 patent, the

'303 patent, and the '676 patent by Defendants;

H.  An award of profits, damages, and costs pursuant to 15 U.S.C. § 1117(a);

I.  A finding that, with respect to Defendants, this case is exceptional, and awarding to

iRobot its reasonable attorney fees under 35 U.S.C. § 285 and/or 15 U.S.C. § 1117;

J.  Judgment against Defendants on all counts of this Complaint; and

K.  Such other relief for iRobot that the Court sees as just.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, iRobot demands trial by jury

in this action of all issues so triable.


Date:  November 8, 2019                    Respectfully submitted,

                                           */s/ Timothy H. Madden*
                                           T. Christopher Donnelly
                                           tcd@dcglaw.com
                                           Peter E. Gelhaar
                                           peg@dcglaw.com
                                           Timothy H. Madden
                                           thm@dcglaw.com
                                           DONNELLY, CONROY & GELHAAR, LLP
                                           260 Franklin Street
                                           Suite 1600
                                           Boston, MA 02110
                                           Telephone:  (617) 720-2880
                                           Facsimile:  (617) 720-3554

                                           Gregg F. LoCascio, P.C. (*pro hac vice*)
                                           gregg.locascio@kirkland.com

29

Anders P. Fjellstedt (*pro hac vice*)
anders.fjellstedt@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:  (202) 389-5000
Facsimile:  (202) 389-5200

Robin A. McCue (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60613
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

*Counsel for Plaintiff*
*iRobot Corporation*

## **CERTIFICATE OF SERVICE**

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 8, 2019.

*/s/ Timothy H. Madden*
Timothy H. Madden