## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

iROBOT CORPORATION,

                     Plaintiff,

v.

SHARKNINJA OPERATING LLC,
SHARKNINJA MANAGEMENT LLC,
AND SHARKNINJA SALES COMPANY,

                     Defendants.

C.A. No. 1:19-cv-12125-ADB

## SHARKNINJA'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY THE CASE IN ITS ENTIRETY PENDING INTER PARTES REVIEW

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................1

II.  THE STATUS OF THE LITIGATION AND SHARKNINJA'S IPRS ...........................2

  A.   The Procedural Status of the Litigation ..................................................2

  B.   SharkNinja Seeks IPR Review of Every Asserted Claim ........................2

  C.   Discovery Is Ongoing and Far From Complete.......................................4

  D.   SharkNinja Has Redesigned Its Products to Ensure That iRobot Cannot
       Continue to Assert Infringement of the Mechanical Patents ...................5

III. LEGAL STANDARD...........................................................................................6

IV.  ARGUMENT .....................................................................................................7

  A.   The Stage of the Case Favors a Stay.......................................................7

       1.   Much Work Remains to Be Done ................................................7

       2.   The Ongoing Pandemic Supports a Stay .....................................8

  B.   A Stay Will Simplify the Issues for This Court.....................................10

       1.   Resolution of the IPRs Will Simplify the Case .........................10

       2.   A Stay Is Fully Justified on the '303 and '038 Patents.............12

       3.   Robot's False Advertising Claim Is Factually Intertwined With the
            Operation of the IQ Robots and Should Be Stayed As Well ....14

  C.   iRobot Will Not Be Prejudiced by a Stay .............................................15

       1.   SharkNinja Has Not Been Dilatory.............................................15

       2.   The Relationship Between the Parties Supports a Stay .............16

            a.   Market Competition Supports a Stay..............................17

            b.   iRobot Is Not Being Harmed by SharkNinja's Presence in
                 the Market ......................................................................18

       3.   All Legal Remedies Will Be Available to iRobot When (or If) the
            Stay Is Lifted.............................................................................18

       4.   There Is No Tactical Disadvantage to iRobot Where It Has
            Refused to Provide Discovery and Delayed the Case................19

V.   CONCLUSION.................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*ACQIS, LLC v. EMC Corp.*,
109 F. Supp. 3d 352 (D. Mass. 2015) ............................................................6, 7, 12

*ACQIS, LLC v. EMC Corp.*,
Case No. 14-cv-13560, 2017 U.S. Dist. LEXIS 202160 (D. Mass. Dec. 8,
2017) ...........................................................................................................7, 11, 12

*Aplix IP Holdings Corp. v. Sony Comput. Entmit, Inc.*,
137 F. Supp. 3d 3 (D. Mass. 2015) .........................................................................16

*Aylus Networks, Inc. v. Apple Inc.*,
856 F.3d 1353 (Fed. Cir. 2017)................................................................................7

*British Telcoms. PLC v. IAC/InterActiveCorp.*,
Case No. 18-cv-366, 2020 U.S. Dist. LEXIS 166996 (D. Del. Sept. 11, 2020).......................9

*Cywee Grp. Ltd. v. HTC Corp.*,
Case No. 17-cv-0932JLR, 2019 U.S. Dist. LEXIS 139075 (W.D. Wash.
Jun. 13, 2019)...........................................................................................................14

*Divx v. Netflix, Inc.*,
Case No. 19-cv-1602 PSG, 2020 U.S. Dist. LEXIS 100327 (C.D. Cal.
May 11, 2020)............................................................................................................9

*Gryphon Networks Corp. v. Contact Ctr. Compliance Corp.*,
792 F. Supp. 2d 87 (D. Mass. 2011) .........................................................................7

*IOENGINE LLC v. PayPal Holdings, Inc.*,
Case Nos. 18-cv-452-WCB, 18-cv-826-WCB, 2019, 2019 U.S. Dist. LEXIS
141545, 2019 WL 3943058 (D. Del. Aug. 21, 2019) ...............................8, 9, 11, 12

*Irwin Indus. Tool Co. v. Milwaukee Elec. Tool Corp.*,
Case No. 3:15-cv-300005, 2016 U.S. Dist. LEXIS 56885 (D. Mass. Apr. 26,
2016) ....................................................................................................................8, 19

*Kamstrup v. Axiøma Metering UAB*,
Case No. 19-cv-1669-WJM-SKC, 2019 U.S. Dist. LEXIS 203740 (D. Colo.
Nov. 25, 2019) ..........................................................................................................18

*Murata Mach. USA, Inc. v. Daifuku Co.*,
Case No. 2:13-cv-866-DAK, 2016 U.S. Dist. LEXIS 107928 (D. Utah
Aug. 15, 2016) ..........................................................................................................18

*Neste Oil OYJ v. Dynamic Fuels, LLC*,
 Case No. 12-cv-01744, 2013 U.S. Dist. LEXIS 92416, 2013 WL 3353984 (D.
 Del. 2015) ................................................................................................................16

*NFC Tech. LLC v. HTC America, Inc.*,
 2015 U.S. Dist. LEXIS 29573 (E.D.Tex. Mar. 11, 2015)....................................8, 10

*NST Glob., LLC v. SIG Sauer Inc.*,
 Case No. 19-cv-792-PB, 2020 WL 1429643 (D.N.H. Mar. 24, 2020) ....................10

*Oticon A/S v. GN Resound A/S*,
 Case No. 15-cv-2066, 2015 U.S. Dist. LEXIS 135621, 2015 WL 5752429 (D.
 Minn. Aug. 5, 2015)................................................................................................16

*PopSockets LLC v. Quest USA Corp.*,
 Case No. 17-cv-3653, 2018 U.S. Dist. LEXIS 168219 (E.D.N.Y. Sept. 28,
 2018) ......................................................................................................................14

*Qxmédical, LLC v. Vascular Sols., LLC*,
 Case No. 17-cv-1969, 2020 U.S. Dist. LEXIS 118305 (D. Minn. July 7, 2020) ......................9

*SKF Condition Monitoring, Inc. v. SAT Corp.*,
 Case No. 07-cv-1116, 2008 WL 706851 (S.D. Cal. Feb. 26, 2008)........................13

*Star Envirotech v. Redline Detection, LLC*,
 Case No. 12-cv-01861, 2013 U.S. Dist. LEXIS 58866 (C.D. Cal. Apr. 3,
 2013) ......................................................................................................................14

*Teva Pharms. Int'l GMBH v. Eli Lilly & Co.*,
 Case No. 18-cv-12029, 2019 U.S. Dist. LEXIS 67575 (D. Mass. Apr. 22,
 2019) ................................................................................................................ *passim*

*Wonderland Nurserygoods Co. v. Baby Trend, Inc.*,
 Case No. 14-cv-01153, 2015 U.S. Dist. LEXIS 53053 (C.D.Cal. Apr. 20,
 2015) ......................................................................................................................12

**Federal Statutes**

35 U.S.C. § 315(b) ........................................................................................................15

35 U.S.C. § 315(e)(2)....................................................................................................11

**TABLE OF EXHIBITS**

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| Ex. A | *SharkNinja Operating LLC v. iRobot Corp.*, IPR2020-00733, Paper No. 11, Institution Decision (PTAB Oct. 6, 2020) |
| Ex. B | *SharkNinja Operating LLC v. iRobot Corp.*, IPR2020-00732, Paper No. 11, Institution Decision (PTAB Oct. 6, 2020) |
| Ex. C | *SharkNinja Operating LLC v. iRobot Corp.*, IPR2020-00734, Paper No. 11, Institution Decision (PTAB Oct. 6, 2020) |
| Ex. D | *SharkNinja Operating LLC v. iRobot Corp.*, IPR2020-00735, Paper No. 11, Institution Decision (PTAB Oct. 13, 2020) |
| Ex. E | *SharkNinja Operating LLC v. iRobot Corp.*, IPR2020-00863, Paper No. 6, Patent Owner Preliminary Response (PTAB Aug. 17, 2020) |
| Ex. F | E-mail from Anders Fjellstedt to Luke McCammon (Oct. 9, 2020, 09:03 AM EST) |
| Ex. G | E-mail from Justin Mullen to iRobot Counsel (Sept. 24, 2020, 07:20 PM EST) |
| Ex. H | Letter from Anders Fjellstedt to Dori Hines (Sept. 29, 2020) |
| Ex. I | Letter from Dori Hines to Anders Fjellstedt (Oct. 9, 2020) |
| Ex. J | Letter from Anders Fjellstedt to Dori Hines (Aug. 28, 2020) |
| Ex. K | E-mail from Jim Lomeo to SharkNinja Counsel (Oct. 14, 2020, 01;18 PM EST) |
| Ex. L | Letter from Anders Fjellstedt to Dori Hines (Oct. 13, 2020) |
| Ex. M | SharkNinja's Local Rule 16.6(d)(4) Preliminary Disclosures (Mar. 6, 2020) |
| Ex. N | Letter from Brian Rosenthal to Gregg LoCascio (July 23, 2020) |
| Ex. O | E-mail from Lori Ham to iRobot Counsel (July 27, 2020, 08:46 PM EST) |
| Ex. P | SharkNinja's Second Supplemental Objections and Responses to iRobot's First Set of Interrogatories (Nos. 1-18) (July 22, 2020) |
| Ex. Q | Letter from Dori Hines to Anders Fjellstedt (Oct. 12, 2020) |
| Ex. R | iRobot's First Supplemental Objections and Responses to Shark's First Set of Interrogatories to iRobot (Nos. 1-12) (Oct. 13, 2020) |
| Ex. S | Letter from Dori Hines to Anders Fjellstedt (Aug. 17, 2020) |
| Ex. T | *DC Health Releases Updated List of High-Risk States*, GOVERNMENT OF THE DISTRICT OF COLUMBIA (Aug. 24, 2020), https://mayor.dc.gov/release/dc-health-releases-updated-list-high-risk-states-8-24-2020 |
| Ex. U | *COVID-19 Travel Order*, Commonwealth of Massachusetts, https://www.mass.gov/info-details/covid-19-travel-order (last accessed Oct. 15, 2020) |
| Ex. V | Transcript of Markman Hearing (Aug. 5, 2020) (excerpt) |

| EXHIBIT | DESCRIPTION |
|---|---|
| Ex. W | USPTO, Trial Statistics: IPR, PGR, CBM (Sept. 2020), *available at* https://www.uspto.gov/sites/default/ files/documents/trial_statistics_20200930.pdf |
| Ex. X | iRobot Corp., Annual Report (Form 10-K) (Feb. 17, 2017) (excerpt) |
| Ex. Y | *In re iRobot Corp. Sec. Litig.*, Case No. 1:19-cv-12536, DI 78, Defendant's Motion to Dismiss, at 15 (D. Mass. May 19, 2020) |
| Ex. Z | *ECOVACS Robotics DEEBOT OZMO T8+ Vacuuming and Mopping Robot with Auto-Empty Station*, BEST BUY, https://www.bestbuy.com/site/ecovacs-robotics-deebot-ozmo-t8-vacuuming-and-mopping-robot-with-auto-empty-station-grey/6423195.p?skuId=6423195 (last visited Oct. 12, 2020) |
| Ex. AA | *Proscenic M7 Pro LDS Robot Vacuum Cleaner*, AMAZON, https://www.amazon.com/Proscenic-M7-Pro-Navigation-Powerful/dp/B07Z9YWWKD (last visited Oct. 12, 2020) |
| Ex. AB | *Neabot: Product Page*, NEABOT, https://www.neabot.com/product-page (last visited Oct. 12, 2020) |
| Ex. AC | HONITURE Q6 Mapping Robot Vacuum with XL Self-Empty Base, AMAZON, https://www.amazon.com/HONITURE-Mapping-Self-Empty-Vacuuming-Tangle-Free/dp/B08DK7JGWR (last visited Oct. 12, 2020) |
| Ex. AD | Stacy Lee, *iRobot Corporation (NASDAQ:IRBT) Is a Buzzing Hot Stock*, STOCKS REGISTER (Oct. 10, 2020), https://stocksregister.com/2020/10/10/irobot-corporation-nasdaqirbt-is-a-buzzing-hot-stock/ |
| Ex. AE | *iRobot Corporation (IRBT) Breaks into New 52-Week High on October 09 Session*, EQUITIES (Oct. 9, 2020, 5:13 PM), https://www.equities.com/news/irobot-corporation-irbt-breaks-into-new-52-week-high-on-october-09-session |
| Ex. AF | Eric Savitz, *iRobot Stock Spikes as Roomba Vacuum Cleaner Sales Soar Amid Shutdown*, BARRON'S (June 15, 2020, 1:51 PM), https://www.barrons.com/articles/irobot-stock-spikes-as-roomba-vacuum-sales-soar-amid-shutdown-51592243480 |
| Ex. AG | *iRobot Share Price Rises 50% YTD: What's Driving the Rally?*, ZACKS' (Sept. 25, 2020), https://www.zacks.com/stock/news/1063406/irobot-share-price-rises-50-ytd-whats-driving-the-rally |
| Ex. AH | Letter from Dori Hines to Anders Fjellstedt regarding Interrogatories (Sept. 18, 2020) |
| Ex. AI | Letter from Dori Hines to Anders Fjellstedt regarding Document Production (Sept. 18, 2020) |

## I.      INTRODUCTION

SharkNinja requests that the Court stay this case pending resolution of its petitions for *Inter Partes* Review (IPR), challenging all asserted claims of iRobot's five asserted patents. IPRs have been instituted on all asserted claims of three of the asserted patents and filed on all the remaining asserted claims. For the two asserted patents that await institution, SharkNinja has removed the allegedly infringing features from its products, so there is no possible claim of ongoing infringement. In the meantime, the parties and the Court sit in the middle of a global pandemic that has substantially slowed the progress of this case and cast the eventual trial date—which is not yet even on calendar—into extreme uncertainty. In these unique circumstances, the three factors that courts consider all strongly support staying the case.

First, discovery is far from complete. Document production is ongoing and there are multiple pending discovery disputes. iRobot refuses to issue a Rule 30(b)(6) notice, there has been just a single third-party deposition, no party depositions have been taken, and expert discovery has not started. The parties argued claim construction, but the *Markman* order has not issued. There is no trial date. The parties and the Court still have far more work ahead of them than behind them.

Second, SharkNinja's IPRs will simplify the issues, regardless of their outcome, and may dispose of the patent infringement claims entirely. If any patent claims do survive, SharkNinja will be estopped from raising invalidity grounds it raised or reasonably could have raised in its IPRs. And in that event, the claim scope likely will have been narrowed to avoid the prior art. The Court will save considerable resources by waiting for the IPRs to conclude before issuing a claim construction order, rather than re-visiting claim construction after the IPRs, if the case is not stayed. And because iRobot's false advertising claim is factually intertwined with its patent infringement claims, that claim should be stayed with the patent claims.

Third, iRobot will not suffer undue prejudice from a stay. The parties are competitors, but the market is rife with competition and was long before SharkNinja entered it. Further, iRobot's booming business confirms that iRobot is not being harmed by SharkNinja's presence. In addition, SharkNinja has removed the features accused of infringing the three mechanical asserted patents— including two not yet instituted in IPR—so there is no possible argument of ongoing infringement as to those patents. Likewise, SharkNinja is no longer using any of the advertising iRobot has challenged. Thus, any alleged harm to iRobot from its claims in this case can be compensated by money damages, confirming that a stay will not unduly prejudice iRobot.

## II.     THE STATUS OF THE LITIGATION AND SHARKNINJA'S IPRS

### A.     The Procedural Status of the Litigation

iRobot filed its Complaint in October 2019, asserting infringement of various claims across six of its patents. *See* DI 1. With its Complaint, iRobot moved for a preliminary injunction. DI 2. The Court denied iRobot's PI motion, concluding that iRobot had not shown it was likely to succeed on infringement. DI 78. The Court did not consider SharkNinja's validity challenge to the PI patents and did not consider whether iRobot would be harmed. *See Id.*

In January 2020, the Court set a schedule. *See* DI 94-3 and 95. The close of fact discovery was not set; the close of expert discovery was not set; the trial date was not set. *Id.* The Court heard arguments on claim construction in August. DI 110. The claim construction order has not issued.

### B.     SharkNinja Seeks IPR Review of Every Asserted Claim

Beginning in March 2020, SharkNinja filed IPR petitions on every asserted claim of the asserted patents. On October 6, the Patent Trial and Appeal Board (PTAB) instituted IPRs on the '048 and '294 patents, the two patents considered in iRobot's failed PI motion. Ex. A; Ex. B. The same day, the PTAB instituted SharkNinja's IPR petition on the '586 patent, the third patent iRobot

originally asserted in its PI motion.[1] Ex. C. The PTAB has thus now concluded that there is a reasonable likelihood that all claims on which iRobot moved for a preliminary injunction are invalid.

On October 13, the PTAB instituted SharkNinja's IPR on the '676 patent. Ex. D. The PTAB noted that for purposes of institution, iRobot "d[id] not contest" SharkNinja's invalidity showing. *Id.* at 7. As of this motion, therefore, the PTAB has instituted IPR proceedings on all asserted claims of three of the five asserted patents, *i.e.*, 26 of the 41 total asserted claims.

The PTAB will issue an institution decision on SharkNinja's '303 patent IPR by November 17. As with the '676 patent, iRobot did not contest SharkNinja's invalidity arguments. Ex. E. SharkNinja fully expects that its IPR on the '303 patent will be instituted next month. In October, SharkNinja filed an IPR on all asserted claims of the '038 patent and expects an institution decision in April or May of 2021. The status of each IPR is identified below:

| IPR No. | Patent No. | Petition Filing Date | Challenged Claims | Status |
| --- | --- | --- | --- | --- |
| IPR2020-00732 | 9,492,048 | 03/23/2020 | 1, 9-12, 17-19 | **Instituted** – Final Written Decision due on or before 10/06/2021 |
| IPR2020-00733 | 9,550,294 | 03/23/2020 | 1-13 (all claims) | **Instituted** – Final Written Decision due on or before 10/06/2021 |
| IPR2020-00735 | 10,045,676 | 03/23/2020 | 1, 2, 4-10, 12-18 | **Instituted** – Final Written Decision due on or before 10/13/2021 |
| IPR2020-00863 | 8,418,303 | 05/06/2020 | 1, 2, 4-12, 14-15 | Institution Decision due on or before 11/17/2020 |
| IPR2020-01641 | 8,950,038 | 10/012020 | 1, 5, 7, 9-12 | Institution Decision due April or May 2021 |

---

[1] iRobot withdrew the '586 patent from its PI request, DI 65 at n.1, and from the litigation. DI 81.

### C.     Discovery Is Ongoing and Far From Complete

The logistical difficulties from the pandemic—along with delays from iRobot—have substantially slowed the progress of discovery in this case.  As such, it is far from complete. iRobot has produced around 49,000 documents, but it has failed to produce large categories of documents. SharkNinja identified search terms to iRobot in July, but iRobot has refused to run all of them. Ex. F. SharkNinja has also requested documents from additional iRobot custodians, but iRobot has refused to produce them. Ex. G; Ex. H. iRobot has not made its source code available, Ex. I at 3, and only agreed to *after* SharkNinja told iRobot it was moving to stay. iRobot has a long way to go in producing documents.

SharkNinja has produced around 59,000 documents, but its document production is also not complete because of iRobot's delay in requesting documents. *Six months* after identifying SharkNinja document custodians, iRobot recently identified new custodians, including three high-level executives. While SharkNinja was investigating this request, and despite SharkNinja telling iRobot it was doing so, iRobot recently filed a motion to compel. DI 131; Ex. J at 3. iRobot's overbroad search requests resulted in more than 74,000 additional documents, more than 1.5 times the number of documents iRobot has produced *in total*. The production of this tremendous volume will take substantial time and cost hundreds of thousands of dollars.

With respect to other discovery, SharkNinja has made its source code available to iRobot for in-person review in two separate locations, Boston and Washington, D.C. iRobot has reviewed SharkNinja's source code for weeks, and is seeking days of additional review in multiple locations. iRobot is seeking, but has not yet obtained, document and/or deposition discovery from third parties: (1) MyTake, which was involved in consumer testing of the accused products; (2) Craft, which was involved in graphical design work relating to the accused products; (3) Mr. Sridhar Solur, a former General Manager and Senior Vice President of SharkNinja; and (4) Omachron, a

Canadian company that SharkNinja has collaborated with on certain design work. SharkNinja is seeking, but has not yet obtained, third-party discovery from Essential Design, whose current or past employees are named inventors on the '048 patent and which has worked with iRobot on features of the asserted patents.

A *single* deposition has been taken, that of a third-party supplier to SharkNinja, Viper. No other depositions have been scheduled, let alone taken.[2] Indeed, iRobot refuses to issue a Rule 30(b)(6) deposition notice to SharkNinja, which is the subject of a pending motion to compel. *See* DI 113, 118, and 121 (iRobot's motion to compel personal depositions while refusing to issue a Rule 30(b)(6) notice). There are other pending discovery disputes. *See* DI 123, 125 (involving iRobot's request for discovery from third-party Omachron); *see also* DI 131 (involving iRobot's motion to compel documents from 4 new SharkNinja custodians, despite SharkNinja telling iRobot it was investigating the issue). SharkNinja has made efforts to avoid discovery disputes, but iRobot refuses to produce documents requested by SharkNinja, which may require Court assistance to resolve.

### D.   SharkNinja Has Redesigned Its Products to Ensure That iRobot Cannot Continue to Assert Infringement of the Mechanical Patents

When designing its IQ robot, SharkNinja studiously avoided using iRobot's patents. As a result, from the start, SharkNinja has steadfastly maintained that it does not infringe iRobot's patents, feeling so strongly that it brought a declaratory judgment action on non-infringement. SharkNinja has detailed why its accused IQ robots do not infringe any of the asserted claims and has made robust invalidity challenges. Ex. M. And it has gone further, making additional

---

[2] Immediately *after* SharkNinja told iRobot that it was filing this motion to stay, iRobot identified dates for certain Rule 30(b)(6) witnesses. Ex. K. Those depositions, however, cannot proceed because iRobot refuses to complete its document production. Ex. L.

modifications to its IQ robots with respect to the three mechanical patents, namely the '048, '303, and '038 patents. The '048 patent claims recite a "bagless cyclonic vacuum;" the '303 patent claims recite an "end guard [that] is removable;" the '038 patent claims require a "removable caster wheel assembly." In its modified products, SharkNinja unambiguously removed the features accused of meeting these claim limitations. iRobot cannot assert and has not asserted infringement of those patents against the modified products.

Months ago, SharkNinja told iRobot about its modifications, Ex. N, produced documents detailing the changes, Ex. O, and supplemented its interrogatory responses, Ex. P at 9-11. And because iRobot was apparently unwilling to purchase publicly-available products, SharkNinja provided the modified products to iRobot. Ex. Q. SharkNinja has asked iRobot whether it asserts infringement of the modified products. iRobot, however, has refused to engage, has not amended its infringement contentions, and has not supplemented its interrogatory responses. Ex. R at 29-31; Ex. S at 2; DI 118 at 7. iRobot's foot-dragging has delayed and complicated this case.

## III.    LEGAL STANDARD

This Court has the inherent power to manage its docket by staying proceedings, including pending IPR. *Teva Pharms. Int'l GMBH v. Eli Lilly & Co.*, Case No. 18-cv-12029, 2019 U.S. Dist. LEXIS 67575 at *14-15 (D. Mass. Apr. 22, 2019). The decision to grant a stay is discretionary. *ACQIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 356 (D. Mass. 2015). Courts consider three factors when deciding a motion to stay patent litigation pending IPR:

>(1) the stage of the litigation, including whether discovery is complete and a trial date has been set;

>(2) whether a stay will simplify the issues in question and the trial of the case; and

>(3) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party.

*Id*. Courts consider the totality of the circumstances, and "the inquiry is largely case specific." *Id*.

## IV.     ARGUMENT

### A.     The Stage of the Case Favors a Stay

#### 1.     Much Work Remains to Be Done

The first factor concerns "the stage of litigation, including whether discovery is complete and a trial date has been set." *Teva*, 2019 U.S. Dist. LEXIS 67575 at *14. As a general rule, "[t]he earlier the stage of proceedings, the greater the reason to grant a stay." *Id*. at *15. Here, document production is not complete, one third-party deposition has been taken, expert discovery has not started, the claim construction order has not issued, and no trial date has been set. The parties are engaged in numerous disputes on discovery issues. No party depositions have been taken. Indeed, iRobot *refuses* to issue a Rule 30(b)(6) deposition notice to SharkNinja and only after SharkNinja asked for iRobot's position on this motion did iRobot provide dates for Rule 30(b)(6) depositions. Ex. K. iRobot has not moved the case forward, refusing to provide substantial discovery and complicating the case with extensive third-party discovery. *See supra* Sections II.C, II.D.

This Court has stayed cases at stages similar to this. *Gryphon Networks Corp. v. Contact Ctr. Compliance Corp.*, 792 F. Supp. 2d 87, 92 (D. Mass. 2011) (stay granted despite substantial written discovery, beginning depositions, claim construction briefing and hearing but no claim construction order, no summary judgment motions, no trial date.); *ACQIS,* 109 F. Supp. 3d at 356-357 (granting stay when document and written discovery underway, claim construction order issued, no depositions, no expert discovery, no summary judgment briefing, and no trial date set.)

Notably, as distinct from *ACQIS*, while the parties here have briefed claim construction and the Court held a claim construction hearing, the claim construction order has not issued. As a result, by staying the case, the Court here can consider the entirety of the prosecution history, including arguments in the instituted IPRs, before issuing a decision on claim scope. *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1361 (Fed. Cir. 2017) ("statements made by a patent

owner during an IPR proceeding can be considered during claim construction and relied upon to support a finding of prosecution disclaimer.") That way, instead of reconsidering claim constructions after the IPRs have concluded—if any claims survive—the Court can issue claim constructions based on the complete prosecution record. *See ACQIS, LLC v. EMC Corp.*, Case No. 14-cv-13560, 2017 U.S. Dist. LEXIS 202160, at *8 and *15-25 (D. Mass. Dec. 8, 2017) (issuing a post-IPR second claim construction, noting that "a central issue is whether and how IPRs that took place after Judge Davis's claim construction order should impact this Court's interpretation" and finding disclaimer in the IPR requiring a claim term to be re-construed).

Where, as here, "[t]here is much more work ahead for the parties and this court than behind the parties and this court," the stage of the proceedings supports a stay. *Irwin Indus. Tool Co. v. Milwaukee Elec. Tool Corp.*, Case No. 3:15-cv-300005, 2016 U.S. Dist. LEXIS 56885, at *7 (D. Mass. Apr. 26, 2016); *NFC Tech. LLC v. HTC America, Inc.*, 2015 U.S. Dist. LEXIS 29573 at * 3 (E.D.Tex. Mar. 11, 2015) (even though not "in its infancy," where "the bulk of the expenses that the parties would incur in pretrial work and trial preparation are still in the future," a stay is appropriate.) Indeed, "the most burdensome stages of the case[] — completing discovery, preparing expert reports, filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice — all lie in the future." *IOENGINE LLC v. PayPal Holdings, Inc.*, Case Nos. 18-cv-452-WCB, 18-cv-826-WCB, 2019, 2019 U.S. Dist. LEXIS 141545, 2019 WL 3943058, at *5 (D. Del. Aug. 21, 2019).

### 2.      The Ongoing Pandemic Supports a Stay

The Court is well aware of the effects of the global pandemic on litigation. Everyone is working from home. Depositions and document collection are being conducted remotely. Trials have been postponed indefinitely. And there is no end in sight. Indeed, by many accounts, the country is just entering the "second wave" as temperatures fall and people spend even more time

indoors. Understandably, these conditions have impeded progress of this case and made discovery more arduous. For example, remote collection of documents has been complicated. The single third-party deposition in this case was conducted remotely and required extensive preparation and set-up, as will all depositions for the foreseeable future. Source code inspection was delayed and logistically difficult due to government restrictions on in-person access. *See* Ex. T (requiring 14-day quarantine for travel to D.C. from "high risk" states); *see* Ex. U (requiring 14-day quarantine unless traveling to Massachusetts from one of just 6 "lower risk states").

In addition to the difficulties for the parties, the Court stated at the claim construction hearing that because of the pandemic, civil trials like this one "are going to be massively delayed." Ex. V at 277:13-14. This has been recognized by other courts in patent cases. *Divx v. Netflix, Inc.*, Case No. 19-cv-1602 PSG (DFMx), 2020 U.S. Dist. LEXIS 100327, at *6-7 (C.D. Cal. May 11, 2020) (noting patent trials would be delayed as "criminal matters will take priority").

When considering stays pending Patent Office review, courts have recognized that "[i]n addition to the efficiencies to be gained by awaiting the outcome of the IPR process, the impact of the COVID-19 pandemic on the Court's operations means that, as a practical matter, it will likely be at least a year before the Court can resume lengthy civil jury trials." *Qxmédical, LLC v. Vascular Sols., LLC*, Case No. 17-cv-1969 (PJS/TNL), 2020 U.S. Dist. LEXIS 118305, at *4 (D. Minn. July 7, 2020); *see also British Telcoms. PLC v. IAC/InterActiveCorp.*, Case No. 18-cv-366, 2020 U.S. Dist. LEXIS 166996, at *16 (D. Del. Sept. 11, 2020) (staying case pending reexamination when fact discovery and claim construction were complete, expert discovery was ongoing, and a trial date was set, noting the effects of the pandemic on scheduling and that "the most burdensome parts of the case for the parties and the court—preparation for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future.")

The unavoidable delays resulting from the pandemic strongly support staying the case now while the PTAB considers the validity of the asserted claims.

### B.     A Stay Will Simplify the Issues for This Court

Courts consider whether a stay is likely to simplify the issues at trial the "most important factor." *IOENGINE*, 2019 U.S. Dist. LEXIS 141545, 2019 WL 3943058, at *8. That simplification was a substantial reason IPR proceedings were created in the first place. Indeed:

> Congress's purpose in creating an inter partes review procedure was to allow the administrative agency that issues patents to consider new information bearing on whether those patents should be canceled or confirmed. Giving the agency the authority to consider the validity of patents in the inter partes review process was designed in large measure to simplify proceedings before the courts and to give the courts the benefit of the expert agency's full and focused consideration of the effect of prior art on patents being asserted in litigation.

*NFC Tech.*, 2015 U.S. Dist. LEXIS 29573 at *12.

Courts have recognized myriad ways in which IPRs can simplify a case, including: (1) prior art will be considered by the Patent Office with its particular expertise; (2) discovery issues relating to the prior art can be alleviated; (3) if any patents are invalidated, infringement claims will be dismissed; (4) the outcome may encourage a settlement without the further use of the Court; (5) the record may be entered at trial, thereby reducing the complexity and length of the litigation; (6) issues, defenses and evidence will be effectively limited in later pre-trial conferences; and (7) the cost of litigation will likely be reduced. *NST Glob., LLC v. SIG Sauer Inc.*, Case No. 19-cv-792-PB, 2020 WL 1429643, at *3 (D.N.H. Mar. 24, 2020).

### 1.     Resolution of the IPRs Will Simplify the Case

The currently-instituted IPRs on 26 of the 41 asserted claims, in three of the five asserted patents, will unquestionably simplify this case. For the '294, '048, and '676 patents, the PTAB has instituted validity proceedings on *every* claim that iRobot has asserted. Exs. A, B, D. Further, as iRobot did not challenge SharkNinja's invalidity assertions in its pre-institution filing, institution

of the '303 patent IPR next month is likely. Upon that institution, 35 asserted claims will be involved in instituted IPR proceedings. SharkNinja expects institution of its IPR on the '038 patent by April or May of 2021, after which all asserted claims will be involved in IPR proceedings.

According to the most recent PTO statistics, in 80% of instituted IPRs, some of the instituted claims are invalidated, and 62% of the time *all* instituted claims are invalidated. Ex. W at 11. There is, therefore, a substantial likelihood that many or all of iRobot's claims will not survive, which would greatly simplify the case and reduce burdens on the parties and the Court.

Of course, if the PTAB invalidates all of the claims now instituted, the case will unquestionably become simpler. Three of the five patents will be removed from the case. Assuming the '303 and '038 patent IPRs are instituted, all of the asserted claims will be at substantial risk of being invalidated. And even if all of the claims are not invalidated, the task of dealing with any remaining claims will be substantially easier than it would have been with the now-asserted 41 claims.

Further, this case involves disparate features of SharkNinja's IQ robots involving: (1) the evacuation station ('048 patent), (2) the recharge and resume operation ('294 patent), communications from and to the robot and mobile device ('676 patent), the brush roll ('303 patent), and the caster wheel assembly ('038 patent). The range and complexity of these features are "sure to challenge the ability of the jury to absorb and rationally decide issues of infringement and invalidity." There is, therefore, a "particularly high premium on simplification," supporting a stay. *IOENGINE*, 2019 U.S. Dist. LEXIS 141545, 2019 WL 3943058, at *31-32.

Even if the PTAB does not cancel all of the asserted claims, the IPRs will—by statute— narrow the litigation by limiting the arguments SharkNinja can subsequently make regarding invalidity. *IOENGINE*, 2019 U.S. Dist. LEXIS 141545, 2019 WL 3943058, at *32. SharkNinja

will be estopped from challenging validity "on any ground that [SharkNinja] raised or reasonably could have raised during the inter partes review." 35 U.S.C. § 315(e)(2).

Further, the IPRs will likely produce additional prosecution history, assisting the Court in addressing claim construction, non-infringement, and invalidity if any claims do survive. *Id*. at *33-34. In IPR proceedings, patent owners like iRobot often make concessions to save the validity of their claims, resulting in disclaimer of claim scope. *ACQIS, LLC v. EMC Corp.*, Case No. 14-cv-13560, 2017 U.S. Dist. LEXIS 202160 (D. Mass. Dec. 8, 2017), at *7-8 (recognizing that prosecution disclaimer applies to IPR proceedings) and at *15-25 (applying prosecution disclaimer to narrow a previous claim construction). Such disclaimer must be considered in assessing, for example, whether iRobot can continue to assert infringement of any claims that survive the IPR proceedings. Staying the case to wait for the prosecution histories to be complete will avoid repeating claim construction after the IPRs conclude.

Finally, allowing the PTAB to consider the validity of iRobot's claims will reduce duplication of effort and possibly inconsistent results between the PTAB and this Court. *Id*. at *34.

### 2. A Stay Is Fully Justified on the '303 and '038 Patents

SharkNinja is seeking a complete stay though the IPRs on the '303 and '038 patents have not been instituted yet. Courts routinely stay cases when some, but not all, asserted patents are involved in IPR proceedings, *IOENGINE*, 2019 U.S. Dist. LEXIS 141545, 2019 WL 3943058, at *31 (collecting cases); *ACQIS,* 109 F. Supp. 3d at 357-358 (granting stay where 2 of 11 asserted patents were subject to IPR), and routinely stay cases pending institution of IPR proceedings. *See Wonderland Nurserygoods Co. v. Baby Trend, Inc.*, Case No. 14-cv-011532015 U.S. Dist. LEXIS 53053, at *8 (C.D.Cal. Apr. 20, 2015). A pre- institution stay has the distinct benefits of avoiding the need to do claim construction twice and potentially rendering claim construction disputes moot, thus avoiding the unnecessary expenditure of Court resources. *Id*. In addition to those benefits,

staying this case pending institution of the '303 and '038 IPRs makes particular sense here, because they and the other patents are asserted against the same SharkNinja robots. There would, therefore, be substantial duplication of technical and damages discovery if the case proceeds on some but not all of the asserted patents.

In addition, the modifications SharkNinja has made to its robots since the litigation was filed, and which make it untenable for iRobot to continue to assert infringement of the '303 and '038 patents, support entering a stay now. SharkNinja has modified its accused IQ robots by, among other things,[3] making it impossible to remove the end cap and the caster wheel assembly, which those patents respectively require. SharkNinja told iRobot about these changes months ago and provided detailed explanations and technical documentation. Exs. N, O, P. SharkNinja recently provided publicly-available products to iRobot with those modifications because iRobot would not purchase products for itself. Ex. Q. Nonetheless, iRobot has steadfastly refused to acknowledge that it cannot continue to assert the '303 or '038 patents against the modified products. Significantly here, even setting aside SharkNinja's robust validity challenges, if iRobot has any viable basis to continue to assert the '303 and '038 patents (and it does not) it could only be with respect to accused products made before SharkNinja's modifications. At *most*, therefore, iRobot has only a claim for past money damages on the '303 and '038 patents. There can be no prejudice to iRobot from a stay when its only claim is for money damages. *SKF Condition Monitoring, Inc. v. SAT Corp.*, Case No. 07-cv-1116, 2008 WL 706851, at *6 (S.D. Cal. Feb. 26, 2008) ("Where Plaintiffs have an adequate remedy at law, there is no undue prejudice . . . the delay inherent in the reexamination process does not constitute, by itself, undue prejudice.").

---

[3] SharkNinja also removed the accused "bagless cyclonic vacuum" from its self-empty base, thus making it impossible for iRobot to assert the '048 patent against the modified products.

### 3.      Robot's False Advertising Claim Is Factually Intertwined With the Operation of the IQ Robots and Should Be Stayed As Well

iRobot's false advertising claim is inextricably joined to its patent claims, and thus should be stayed along with the patent claims. iRobot's advertising and patent infringement claims are both directed to how SharkNinja's IQ robots operate. For example, its advertising claim challenges statements about how SharkNinja's IQ robots perform its recharge and resume operation and its infringement allegation on the '294 patent involves the very same operation. In moving for a preliminary injuction, iRobot noted the connection between SharkNinja's advertising statements and its patents, alleging that "[t]he phrases that Shark uses to describe key features of its IQ Robot, *including iRobot's patented technology at issue here*, are strikingly similar to iRobot's own marketing." DI 12 at 12 (emphasis added). Confirming that iRobot's advertising claim is tied to product operation, iRobot has said "Shark's IQ robot vacuum does not perform as advertised." Ex. R at 26. Because iRobot's infringement and advertsing claims are factually intertwined, this case should be stayed in its entirety.

Courts have recognized the benefit of staying non-patent claims with patent claims, pending IPR review. In *Cywee Grp. Ltd. v. HTC Corp.*, Case No. 17-cv-0932JLR, 2019 U.S. Dist. LEXIS 139075, at *20-21 (W.D. Wash. Jun. 13, 2019), the court stayed the patent and non-patent claims, stating that "[s]hould the court allow [the non-patent] counterclaims to proceed, it would create the potential for two trials on factually intertwined causes of action: one on [] allegations" of wrongfully retaining software "and one on [] patent infringement claims." The court concluded that the "claims are best tried together" because they "all arise from the same transaction." *Id*.

Likewise here, iRobot's patent infringement and advertising claims relate to the same transaction—the operation of SharkNinja's IQ robot vacuums. *PopSockets LLC v. Quest USA*

*Corp.*, Case No. 17-cv-3653, 2018 U.S. Dist. LEXIS 168219, at *2-5 (E.D.N.Y. Sept. 28, 2018) (pending IPR resolution, staying patent, copyright, Lanham Act, and state law unfair competition and tort claims, noting that "[t]hough the patent and non-patent claims are legally unrelated, the underlying factual disputes are intertwined" and that "judicial economy will be served by avoiding the bifurcation of this litigation, particularly in the event that some patent claims remain after IPR is completed."); *Star Envirotech v. Redline Detection, LLC*, Case No. 12-cv-01861, 2013 U.S. Dist. LEXIS 58866, at *6 (C.D. Cal. Apr. 3, 2013) (pending IPR, staying patent infringement, false advertising and unfair competition claims). iRobot's advertising claim, which is unquestionably factually intertwined with its patent infringement claims, should be stayed.

## C.    iRobot Will Not Be Prejudiced by a Stay

The third factor in assessing whether a stay pending IPR is appropriate considers "whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *Teva*, 2019 U.S. Dist. LEXIS 67575 at *18. Because "staying any case pending an IPR risks delaying the final resolution of the dispute, the potential for delay does not, by itself, establish undue prejudice." *Id*. (citations omitted). Instead, courts consider dilatory motive on the part of the party seeking a stay, the parties' relationship, and the availability of legal remedies once the stay is lifted. *Id*. at *18-19. Each of those considerations supports staying the entire case now.

### 1.    SharkNinja Has Not Been Dilatory

SharkNinja was diligent—and not dilatory—in filing its IPRs. The three instituted IPRs were filed about six months after iRobot filed this case, and the fourth just six weeks later. This Court has found "no evidence of dilatory motive" when a defendant waited ten months to file IPRs from an initial complaint. *Id*. at *22. SharkNinja's IPR petitions "were filed timely" and "well-

within the statutory [one-year] period allowed for filing." *Id.*; 35 U.S.C. § 315(b).[4] Further, SharkNinja filed this motion just days after the institution decision on the '676 patent. SharkNinja was not dilatory.

### 2.    The Relationship Between the Parties Supports a Stay

While stays are "disfavored in cases involving direct competitors," this Court has recognized that the "presence of other firms in the market decreases the likelihood of prejudice" to the non-moving party and that the parties being direct competitors "does not end the inquiry." *Teva*, 2019 U.S. Dist. LEXIS 67575 at *20-21. Instead, where there is "no indication that the imposition of a stay" will cause the patentee to "lose any presently available legal remedies," a stay is appropriate. *Id*. at *21-22; *see also Aplix IP Holdings Corp. v. Sony Comput. Entmit, Inc.*, 137 F. Supp. 3d 3, 6 (D. Mass. 2015) ("[Plaintiff] does seek a permanent injunction, as well as monetary damages. It will still be able to seek such an injunction, as well as monetary damages with prejudgment interest, for any claims that survive *inter partes* review."); *See Oticon A/S v. GN Resound A/S*, Case No. 15-cv-2066, 2015 U.S. Dist. LEXIS 135621, 2015 WL 5752429, at *2 (D. Minn. Aug. 5, 2015) ("While it is undisputed that Plaintiffs and Defendants are head-to-head competitors in a market with relatively few competitors, that is not uncommon in patent litigation. Money damages and, in appropriate cases, a permanent injunction, are ordinarily adequate to remedy harm caused by infringement, including loss of sales and market share.")

While the parties compete in segments of the robot vacuum market, the market is rife with extensive and intense competition, which started long before SharkNinja entered the market. Any

---

[4] SharkNinja's IPR on the '038 patent was filed within the statutory time period but after the other IPRs because SharkNinja expected iRobot to engage on the modifications, making its caster wheel assembly absolutely non-removable. When iRobot dragged its feet and refused to engage, SharkNinja had no choice but to file the IPR. Given iRobot's conduct, SharkNinja was not dilatory.

remedy to which iRobot may be entitled will still be available to it after a stay is lifted. Further, iRobot's conduct in delaying this case supports that it will not be prejudiced by a stay.

a.      **Market Competition Supports a Stay**

SharkNinja and iRobot are direct competitors in certain segments of the robot vacuum market. There are, however, multiple other active competitive firms in the market and have been for some time, thus decreasing if not eliminating any prejudice to iRobot from a stay. *Neste Oil OYJ v. Dynamic Fuels, LLC*, Case No. 12-cv-01744, 2013 U.S. Dist. LEXIS 92416, 2013 WL 3353984, at *8 (D. Del. 2015) ("[t]he presence of multiple active firms in the relevant market, however, may decrease the likelihood of such harm befalling the plaintiff.")

iRobot has recognized that it faces extensive competition from companies *other than SharkNinja*, ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Significantly, as of the end of 2016, *before SharkNinja even entered the market*, iRobot recognized intense competition, stating in its 10-K that "[a] number of companies have developed or are developing robots that will compete directly with our product offerings. . . . . The global market for robots is highly competitive. . . ." Ex. X at 12. iRobot recently asserted in securities litigation pending in this Court that "in February 2017 [again, *before SharkNinja entered the market*], iRobot warned investors that it was facing '***intense competition***' and that such '[i]ncreased competitive pressure could result in a loss of sales or market share.'" *In re iRobot Corp. Sec. Litig.*, Case No. 1:19-cv-12536, DI 78 at 15 (D. Mass. May 19, 2020) (attached as Ex. Y). In addition, recent new entrants and new offerings demonstrate that the market is highly competitive. Exs. Z, AA, AB, AC. The competitiveness of the market supports that iRobot will not be prejudiced by a stay.

17

### b.      iRobot Is Not Being Harmed by SharkNinja's Presence in the Market

As the Court will recall, iRobot made dire predictions when it filed this litigation about harm to it from SharkNinja's IQ robots. *See* DI 1 at ¶¶ 38, 50, 62, 74, 86, 99; *See* DI 2 at 10-18. Not only have none of iRobot's predictions come true, the opposite has happened. Analysts are *raving* about iRobot's performance and stock potential. Exs. AD, AE, AF, AG. A June 2020 article noted that "Roomba Vacuum Cleaner Sales Soar Amid Shutdown" and shows that iRobot's sales are booming, its CEO stating that iRobot "has seen strong growth so far in the second quarter, particularly in the U.S." Ex. AF. The article further noted that iRobot's stock price was "up 69% year to date, and more than 150% from its low point of $33.91 on March 18[, 2020]." *Id*. iRobot's performance shows that it will not be unduly prejudiced by a stay.

### 3.      All Legal Remedies Will Be Available to iRobot When (or If) the Stay Is Lifted

This Court has recognized that a stay is appropriate when "[t]here is no indication that the imposition of a stay" "will cause [a patentee] to lose any presently available legal remedies." *Teva*, 2019 U.S. Dist. LEXIS 67575 at *22. And "delay to a party's recovery of monetary damages is not meaningful where the prevailing party in patent cases may recover prejudgment interest." *Id*.

In assessing this issue, courts consider whether the patentee moved for a preliminary injunction. *Id*. at *21-22. When a party has done so and failed, courts have found that a stay during IPR is appropriate because failure on a preliminary injunction shows that the patent owner is not harmed by the accused infringer's presence in the market. *Kamstrup v. Axiøma Metering UAB*, Case No. 19-cv-1669-WJM-SKC, 2019 U.S. Dist. LEXIS 203740, at *7 (D. Colo. Nov. 25, 2019) ("Because no preliminary injunction will issue, [defendant] will be able to compete during the pendency of this litigation in any event. Consequently, a stay will not place [defendant] in any better competitive position than it currently enjoys."); *see Murata Mach. USA, Inc. v. Daifuku Co.*,

Case No. 2:13-cv-866-DAK, 2016 U.S. Dist. LEXIS 107928, at *6 (D. Utah Aug. 15, 2016) (denying a preliminary injunction because the PTAB had instituted IPRs).

Here, iRobot moved for a preliminary injunction on two of its patents, but lost, the Court finding that "SharkNinja has raised substantial questions regarding iRobot's infringement allegations" as to the '048 and '294 patents. DI 78 at 16. Because of the substantial questions on infringement, the Court stated that it "need not reach the question of the validity of iRobot's '048 and '294 patents at this stage." *Id*. Now, the PTAB has determined that SharkNinja has shown a reasonable likelihood that it will prevail on invalidity of the PI patents and on the '676 patent. SharkNinja fully expects that the PTAB will also institute the '303 and '038 patents. Given that: (1) iRobot lost its bid for a preliminary injunction on the '294 and '048 patents; (2) the PTAB has now instituted IPR proceedings on the '294, '048 patents, and '676 patents and is poised to issue an institution decision on the '303 patent; and (3) SharkNinja has made further modifications to its IQ robots to eliminate any possible claim on the '303 and '038 patents, there is no indication that iRobot will lose any presently-available remedies on its patent claims if a stay is entered.

As to its false advertising claim, iRobot did not seek a preliminary injunction, SharkNinja has removed the challenged advertising, and iRobot has not made any claim against SharkNinja's current advertising. Ex. R at 16-25. As with its patent claims, iRobot will not lose any presently-available remedies if a stay is entered. While SharkNinja submits that there are no losses to iRobot at all, there are clearly no losses to iRobot "that cannot be addressed by money damages" if it succeeds on any of its claims. *Irwin Indus. Tool.*, Case No. 3:15-cv-300005, 2016 U.S. Dist. LEXIS 56885, at *12. A stay of the entire case, therefore, will not unduly prejudice iRobot.

####     4.     There Is No Tactical Disadvantage to iRobot Where It Has Refused to Provide Discovery and Delayed the Case

In considering whether iRobot will be prejudiced by a stay and whether there is a tactical

disadvantage to iRobot, iRobot's dilatory discovery conduct should also be considered. That discovery is not further along is due to iRobot, which refuses to issue a Rule 30(b)(6) notice, refuses to search its documents using the terms SharkNinja provided, and refuses to search from additional custodians. *See supra* Section II.C. iRobot also has not provided:

- information relating to validity, including documents related to iRobot's prior art products, including specific Scooba and Roomba models;
- damages information, including information on the market before the introduction of the accused IQ robots, and information regarding market share beyond that submitted with its PI motion, which is now over a year old and accounts for less than half of the time the accused IQ robots have been on the market; and
- information relevant to iRobot's request for a permanent injunction, such as whether its products practice the patents and information regarding iRobot's licensing efforts.
- testing of SharkNinja's accused IQ robots, ████████████████████████ ████ and customer comparisons of SharkNinja's IQ robots to iRobot's products;
- its advertising, despite its false advertising claim relating to SharkNinja's advertisements;
- damages information, including documents showing what features covered by the asserted patents drive customer demand, its market projections, the relative importance of the patented features, research and development expenditures, brand valuation reports.

Exs. I, AH, AI.

And perhaps most importantly, iRobot has continuously refused to even acknowledge SharkNinja's modifications to its IQ Robots or disclose whether it asserts they infringe the '048, '303, and '038 patents. *See, e.g.,* Ex. R at 31 (iRobot's Oct. 13, 2020 Supplemental Interrogatory Response failing to provide a position on the infringement of the modifications). Instead, iRobot has inappropriately used the cloud of litigation to leave SharkNinja in an uncertain position, incurring costs to continue to defend patents that iRobot cannot argue are still infringed and which the PTAB will likely find invalid. iRobot can hardly claim that it will suffer a tactical disadvantage from a delay that will only simplify the case when it has manufactured delay to its benefit.

## V.     CONCLUSION

SharkNinja respectfully requests that this case be stayed pending resolution of its IPRs.

DATED: October 15, 2020

*/s/ Doris Johnson Hines*

Doris Johnson Hines
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4000
dori.hines@finnegan.com

Alissa K. Lipton #678314
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
Two Seaport Lane
Boston, MA 02210-2001
(617) 646-1643
alissa.lipton@finnegan.com

Brian A. Rosenthal
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
BARosenthal@gibsondunn.com

*Attorneys for Defendants*
*SharkNinja Operating LLC,*
*SharkNinja Management LLC, and*
*SharkNinja Sales Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was filed through the ECF system on October 15, 2020 and will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

<u>*/s/ Doris Johnson Hines*</u>
Doris Johnson Hines